# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 254 | DATE | January 28, 2004 |
| CASE TITLE | William E. Dugan, et al  v  Carl M. Quanstrom, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ■ Status hearing reset to 2/24/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

**Memorandum opinion and order entered. Defendants' motion to dismiss is denied. Defendants answers to the second amended complaint are due by 2/20/04.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | JAN 29 2004 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| GDS courtroom deputy's initials | | '04 JAN 29 PM 1:10 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
JAN 2 9 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM E. DUGAN, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CARL M. QUANSTROM, individually and d/b/a ) <br> Monee Nursery Co., a/k/a Monee Nursery & ) <br> Landscape Company, and MONEE NURSERY, ) <br> LLC, an Illinois limited liability company, ) <br> ) <br> Defendants. ) | No.    03 C 0254 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

In their second amended complaint,[1] plaintiffs, the Trustees of the Midwest Operating Engineers Welfare Fund, the Midwest Operating Engineers Pension Trust Fund, the Operating Engineers Local 150 Apprenticeship Fund and the Local 150, I.U.O.E., Vacation Savings Plan ("Trustees") allege that defendants Carl M. Quanstrom, individually and doing business as ("d/b/a") Monee Nursery Co. ("Monee Nursery"), also known as Monee Nursery and Landscape Company, and Monee Nursery, LLC, are liable under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145, for neglecting obligations to an executed Landscaping Memorandum of Agreement with International Union of Operating Engineers Local 150, AFL-CIO ("Local 150"). Defendants have moved to dismiss the second amended complaint, arguing that (1) *res judicata* bars the claims for fringe benefits prior to September 20,

---

[1] Defendant Quanstrom's earlier motion to dismiss plaintiffs' first amended complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) was denied on October 9, 2003.

2000; and (2) plaintiffs failed to plead in accordance with FED. R. CIV. P. 10(b). For the reasons stated below, the court denies the defendants' motion to dismiss in its entirety.

## FACTS

According to plaintiffs' second amended complaint, Monee Nursery was initially owned by defendant Quanstrom's parents as co-owners and then by Quanstrom as sole proprietor. On July 12, 1984, Quanstrom's mother, Myrene Quanstrom, executed a Landscaping Memorandum of Agreement (the "Agreement") with Local 150 as "co-owner" of Monee Nursery. The Agreement, attached as Exhibit A to the second amended complaint, was entered into by Monee Nursery, its successors and assigns. The Agreement incorporated the Master Agreement with Local 150, which set the wages, benefits and grievance procedures between Local 150 and a member contractor. According to the second amended complaint, the Master Agreement provides that the employer agrees to be bound by the terms of the Trust Agreement of the Fringe Benefit Funds and to make prompt payment of the per-hour contributions with respect to each Trust Fund. Plaintiffs allege that Monee Nursery never contributed to the Midwest Operating Engineers Fringe Benefit Funds.

Concerned that Monee Nursery was performing bargaining unit work without using Local 150 unit operating engineers, Local 150 requested arbitration of a collective bargaining agreement with Monee Nursery in December 1993. Monee Nursery subsequently filed suit in the Circuit Court of Cook County, Illinois, to stay the arbitration proceedings, arguing that the Agreement was invalid and, alternatively, had been abandoned by the parties. The circuit court ruled that the Agreement bound Monee Nursery. In October 1998, the Illinois Appellate Court affirmed the circuit court's decision.

On September 19, 2000, an arbitrator found that Monee Nursery violated the underlying Master Agreement and failed to properly terminate the Agreement pursuant to its terms. On December 14, 2000, Monee Nursery filed a Complaint against Local 150 and the American Arbitration Association in the Circuit Court of Cook Country to vacate the arbitration award. On January 26, 2001, Local 150 filed a Notice of Removal, and the case was subsequently removed to this court. On September 12, 2002, Judge Norgle denied Monee Nursery's motion for summary judgment seeking to vacate the arbitration award and granted Local 150's cross-motion for summary judgment seeking enforcement of the arbitration award. Monee Nursery & Landscape Co. v. Int'l Union of Engineers, Local 150 AFL-CIO, 2002 WL 31085091 (N.D. Ill. 2002). On November 7, 2003, the United States Court of Appeals for the Seventh Circuit affirmed Judge Norgle's decision. Monee Nursery & Landscape Co. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO, 348 F.3d 671 (7th Cir. 2003).

On June 10, 2002, Monee Nursery organized under the Illinois Limited Liability Company Act. Plaintiffs allege that Monee Nursery, LLC maintains its offices at the same address and engages in the same business as Monee Nursery, and that Monee Nursery, LLC never contributed to the Midwest Operating Engineers Fringe Benefit Funds. Plaintiffs allege that defendant undertook to continue the business of Monee Nursery through Monee Nursery, LLC to avoid the obligations of Monee Nursery, cognizant of Monee Nursery's continuing liability to the funds. Plaintiffs' second amended complaint alleges that Monee Nursery, LLC is a successor and/or alter ego of Monee Nursery, which renders the LLC bound to the same contract with Local 150.

On October 20, 2003, plaintiffs filed their second amended complaint against defendants Quanstrom, individually and d/b/a Monee Nursery, and Monee Nursery, LLC, seeking delinquent fringe benefit contributions and an audit pursuant to ERISA.

## DISCUSSION

**(1)** *Res Judicata*

Defendants have moved to dismiss plaintiffs' second amended complaint, invoking the doctrine of *res judicata*. "Under *res judicata*, a 'final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" Brown v. Felsen, 442 U.S. 127, 131 (1979)(quoting Montana v. United States, 440 U.S. 147, 153 (1979)). A successful *res judicata* defense must meet three elements: "1) an identity of the parties or their privies, 2) an identity of the causes of action, and 3) a final judgment on the merits." People Who Care v. Rockford Bd. of Educ., 68 F.3d 172, 177 (7th Cir. 1995).

In their motion,[2] defendants argue that the prior arbitration award to Local 150 bars the present ERISA action by the Trustees. Specifically, defendants assert that: 1) Local 150 and the plaintiffs are in privity because plaintiffs, not Local 150, are the true beneficiaries of the arbitration award for fringe benefits and the Trustees were represented by Local 150 in the arbitration; 2) the causes of action are identical because the present ERISA action seeks the same fringe benefits awarded in the arbitration; and 3) the arbitration award, affirmed by both the district court and court of appeals, is a final judgment.

---

[2]The court notes that defendants failed to file their reply brief in support of the instant motion.

4

With respect to his privity argument, defendants direct the court's attention to Chicago Dist. Council of Carpenters Pension Fund v. Pientka, 1985 WL 2320 (N.D. Ill. 1985). In Pientka, the plaintiffs were multiple union trust funds, trustees of the trust funds and the union that established the trust. Id. The defendants were a corporation and its president, who were obligated to make contributions to the trust funds pursuant to a collective bargaining agreement. Id. When the defendants failed to make the contributions, the plaintiffs sued pursuant to ERISA and Section 301 of the Taft-Hartley Act (29 U.S.C. §§ 185 and 1132) to collect delinquent benefit payments ("Suit 2"). Id. However, prior to Suit 2, a default judgment had already been entered against the corporation in a separate action brought by the trust funds to recover the missing contributions ("Suit 1"). Id. The defendants successfully argued that *res judicata* barred Suit 2. Id.

The Pientka court stated that privity of parties is often determined by the interest that is litigated and not merely by the names of the parties as they appear in the pleadings. Pientka, 1985 WL 2320. The rule is that "a person whose interest is put in litigation by one entitled to represent him is bound by the judgment as though he was named as a party." Id. In finding privity between the parties, the court noted that the trust funds were nominally and effectively parties to both actions. Id. Merely joining additional plaintiffs in Suit 2 did not change the fact that a judgment was already entered against the defendants in favor of the trust funds in Suit 1. Id. The court specifically stated that "the legal effect of any judgment will be that the defendants will have to pay monies to the Trust Funds." Id.

The instant action differs from Pientka in several important aspects. In Pientka, the court readily found privity because the trust funds were named plaintiffs in both suits. Here, however,

the Trustees were not named plaintiffs in the arbitration. Only Local 150 was a named plaintiff in arbitration. Defendants assert that Local 150 and the Trustees are in privity because Local 150 represented the interests of the Trustees in the arbitration, winning an award for wage contributions and fringe benefit funds.

At first blush, defendant's contention that Local 150 and the Trustees are in privity is somewhat persuasive due to both actions seeking payment of delinquent contributions to the fringe benefit funds. Defendants contend that because Local 150 sought compensation for delinquent contributions, the Trustees' interest in such compensation was already represented by Local 150, thus placing Local 150 and the Trustees in privity. However, caselaw subsequent to Pientka makes clear that a union does not represent the same interests as a trust fund. Moreover, the Seventh Circuit frowns on the concept of what it calls "virtual representation." Central States, Southeast and Southwest Areas Pension Fund v. D Investments, Inc., 2002 WL 1759938, at *5 (N.D. Ill. July 30, 2002)(citing DeBraska v. City of Milwaukee, 189 F.3d 650, 653 (7th Cir. 1999)).

In Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 575-576 (U.S. 1985), the Supreme Court noted that:

> [C]ompelling benefit plans to rely on unions would erode the protections ERISA assures to beneficiaries...ERISA places strict duties on trustees with respect to the interests of beneficiaries, and unions' duties toward beneficiaries are of a quite different scope...A trustee's duty extends to all participants and beneficiaries of a multiemployer plan, while a local union's duty is confined to current employees employed in the bargaining unit in which is has representational rights."

The Court explained that requiring benefit plans to rely on union enforcement runs contrary to the core principles of ERISA and federal labor policy. ERISA exists in large part to

6

ensure that a worker will actually receive a promised pension benefit. Id. at 569, 577. See also Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364 (1984) (benefit plans can bring independent actions and need not rely on union grievance and arbitration procedures). In Pipe Fitters' Welfare Fund, Local Union 597 v. Mosbeck Industrial Equipment, Inc., 856 F.2d 837, 854 (7th Cir. 1988), the Seventh Circuit, citing to Central States, noted that "[W]e cannot say that the Trust Funds are the representative of the Union for purpose of enforcing employer contributions." Conversely, it follows that a union is not the representative of a trust fund.

These authorities compel the conclusion that Local 150 did not represent the interest of the Trustees in arbitration. Local 150 represented its own interest, primarily concerned with Monee Nursery's assignment of workers. According to the Labor Arbitration Opinion and Award attached as an exhibit to plaintiffs' response to the instant motion, the issues Local 150 presented for resolution were:

> 1. Whether the Employer violated Article 1, Article 6, and Article 13 of the Illinois and Indiana Landscape Contractors Labor Agreement when it assigned non-bargaining unit members to bargaining unit work on November 16, 1993 and continuing to date?
> 2. If so, what is the appropriate remedy?

After concluding that from November 1993 through September 2000 Monee Nursery "violated Articles 6, 12, and 13 of the Agreement when it utilized non-union members to perform bargaining unit work," the arbitrator ordered Monee Nursery "to pay damages to the Union in the amount of $133,168 for non payment to fringe benefit plans and under payment of wages from November 17, 1993 to [September 19, 2000]." In their *res judicata* argument, defendants essentially contend that a present judgment for failure to pay fringe benefits would render Monee Nursery doubly liable for its failure to make payments to the Funds. Notwithstanding the fact

7

that defendant has yet to pay any of the arbitration award, the risk of a double reward is eliminated by the fact that the arbitrator did not award any monetary damages for the violations of Article 12 of the collective bargaining agreement entitled Fringe Benefit Contributions ("Therefore, despite the Article 12 violation I cannot order a monetary remedy"). Since monetary damages were not actually awarded for Monee Nursery's failure to pay fringe benefits, this court runs no risk of awarding monetary damages twice for the same conduct.

Because defendants have failed to demonstrate privity, the court need not discuss the other two elements of *res judicata*, namely identity of causes of action or final judgment on the merits. Defendants' motion to dismiss on grounds of *res judicata* is therefore denied.

**(2) FED. R. CIV. P. 10(b) - Form of Pleadings. Paragraphs; Separate Statements.**

Defendants have also moved to dismiss pursuant to FED. R. CIV. P. 10(b), arguing that plaintiffs should draft their complaint to make separate claims against Monee Nursery, LLC and Quanstrom. Defendants argue that the claims against Monee Nursery, LLC and Quanstrom are founded on separate transactions or occurrences. Defendants overlook the complete language of the portion of Rule 10(b) that they invoke. Rule 10(b) states, "Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Defendants misconstrue the meaning of "separate transaction or occurrence" by focusing on the parties named as defendants. In fact, one transaction, Monee Nursery's alleged participation in a collective bargaining agreement and subsequent non-payment under that contract, creates this ERISA claim. Plaintiffs need not bring separate claims against Monee Nursery, LLC and Quanstrom, since plaintiffs allege that Monee Nursery and all its successors

8

and/or alter egos are parties to that one transaction. Requiring plaintiffs to raise separate claims against Quanstrom and Monee Nursery, LLC would not serve the purpose of Rule 10(b) because separation would not facilitate a "clear presentation of the matters set forth." Separation would likely confuse the matter further.

## CONCLUSION

For the reasons stated herein, defendants' motion to dismiss is denied. Defendants are directed to file their answers to the second amended complaint on or before February 20, 2004. This matter is set for a report on status on February 24, 2004, at 9:00 a.m., at which time the parties are to have conferred and shall present a definitive proposed discovery plan.

**ENTER:** **January 28, 2004**

_____
**Robert W. Gettleman**
**United States District Judge**